UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |  |
|---|---|---|
| DALE V. MATANIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12CV472 |
| | ) | |
| WELLS FARGO BANK, N.A., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion to Dismiss Amended Complaint ("Motion to Dismiss") (ECF No. 12). This action was brought by former homeowner Dale V. Matanic ("Matanic") against Wells Fargo Bank, N.A. ("Wells Fargo"), Federal National Mortgage Association ("Fannie Mae"), Samuel I. White, P.C. ("SIWPC"), and Joan K Matanic.[1] Defendants Wells Fargo, Fannie Mae, and SIWPC collectively ("Defendants") move this Court to dismiss the action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Motion to Dismiss was fully briefed and a hearing was held on September 11, 2012. For the reasons set

---

[1] Joan Matanic is Plaintiff's wife, but the couple is now separated and Ms. Matanic has filed a complaint seeking divorce. Am. Compl. ¶ 6 [hereinafter Compl.] (ECF No. 10). Naming Ms. Matanic does not destroy complete diversity because she is a nominal party. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."). A nominal party is one that is "part of a suit only as the holder of assets that must be recorded in order to afford complete relief; no cause of action is asserted against a nominal defendant." *Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002). The Matanics entered into the mortgage loan on the home at issue jointly in August of 2005. Compl. ¶ 7. Accordingly, Ms. Matanic is joined as a defendant as a nominal party against whom the complaint includes no claims.

forth herein, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

On August 19, 2005, Dale and Joan Matanic entered into a mortgage loan with Wells Fargo on a residence at 202 Gunby Drive, Richmond, Virginia 23229. Am. Compl. ¶¶ 6–7 [hereinafter Compl.] (ECF No. 10). The loan was evidenced by a note ("Note" or "the Note") and secured by a deed of trust ("Deed of Trust or "the Deed of Trust"). Compl. ¶ 7. Matanic concedes he and Ms. Matanic owed money under the terms of the Note and Deed of Trust. Compl. ¶ 8. During the months of November and December 2011, the Matanics corresponded with Wells Fargo regarding modification of their loan to avoid foreclosure. Compl. ¶¶ 39–51. Foreclosure was scheduled for, and took place on, December 15, 2011 at which time SIWPC sold the home to the high bidder (either Wells Fargo or Fannie Mae). Compl. ¶ 60.

The correspondence and communication pertinent to this litigation comes in two forms, the first being the notifications required by the Note and Deed of Trust in the event of default and prior to acceleration. In a letter ("Acceleration Letter") dated July 17, 2011, Wells Fargo notified the Matanics of their default and the amount they needed to pay in order to avoid acceleration.[2] Defs.' Mem. Supp. Mot. to Dismiss Am. Compl.

---

[2] Plaintiff did not include the Acceleration Letter in the Complaint. However, it may be considered by this Court because it was referenced in, and is integral to, the complaint. Compl. ¶ 12. In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider a document not included with the complaint if "it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks omitted) (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). The plaintiffs do not dispute the authenticity of the Acceleration Letter attached to the

Ex. A [hereinafter Acceleration Letter]. The Acceleration Letter required payment of $2,739.65 by August 16, 2011 in order to cure the default and avoid acceleration. The letter also required the regular monthly payment that would have been due August 1, 2011 be paid by August 16, 2011 in order to cure. Compl. ¶ 12. Plaintiff contends the Acceleration Letter does not conform to the notice requirements of the Note and the Deed of Trust. The pertinent language in each document is included below:

> The Note requires notice of default as follows:
>
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the *overdue amount* by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be *at least 30 days after the date on which the notice is mailed* to me or delivered by other means.

Compl. Ex. A § 6(c) (emphasis added)

> The Deed of Trust requires notice of acceleration as follows:
>
> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, *not less than 30 days from the day the notice is given to Borrower,* by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. *The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.*

Compl. Ex. B § 22 (emphasis added).

---

Defendants' Motion to Dismiss. Accordingly, this Court may consider the letter at the 12(b)(6) stage. *See Gasner v. County of Dinwiddie,* 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.")

The language used in the Acceleration Letter is as follows:

> [A]ny additional monthly payments, late charges and other charges that may be due under the note, mortgage and applicable law after the date of this notice must also be paid. . . .  If foreclosure is initiated, you have the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have.

Acceleration Letter 1.

The second form of pertinent communication between the parties consists of conversations between Wells Fargo representatives and Matanic in December of 2011. On December 13, 2011, Matanic alleges he spoke with an unidentified Wells Fargo representative who told him that Wells Fargo needed federal tax information in order to stop the scheduled December 15, 2011 foreclosure. Compl. ¶ 49. Matanic said it would be difficult because he did not have the required information, but the representative told him Wells Fargo needed the information to stop the foreclosure. Compl. ¶ 49. A similar conversation purportedly occurred the next day on December 14, 2011, when Matanic alleges another Wells Fargo representative told him that if the tax information was provided before the foreclosure on December 15th, Wells Fargo would cancel the sale. Compl. ¶ 53. Matanic "went to a great deal of trouble and some small expense to send Wells Fargo the tax information" by December 14, 2011. Compl. ¶ 56. The foreclosure sale, however, took place on December 15, 2011. Compl. ¶ 60. Matanic also alleges he did not obtain private counsel to attempt to stop the foreclosure sale in reliance on the statements made by the Wells Fargo representatives. Compl. ¶ 52.

On May 25, 2012, Matanic filed suit in the Circuit Court of Henrico County,

Virginia.  Defendants properly removed the case to the Eastern District of Virginia on June 27, 2012.  Plaintiff amended his complaint on July 24, 2012.  Plaintiff's amended complaint asserts four counts: first, that neither he nor Ms. Matanic received *proper* notice of acceleration in the breach of the Note and Deed of Trust ("Count One"); second, that Wells Fargo committed actual fraud by stating the foreclosure sale would be stopped if tax information was received ("Count Two"); third, in the alternative, that Wells Fargo committed constructive fraud by stating the foreclosure sale would be stopped if tax information was received ("Count Three"); and finally that Wells Fargo breached the implied covenant of good faith and fair dealing by foreclosing on the home ("Count Four").  Defendants moved to dismiss all four counts of the Amended Complaint and asked the Court to hold quiet title is not a proper remedy in this case.  Each issue is discussed in turn below.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8 of the Federal Rules requires a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This pleading standard does not require "detailed factual allegations;" *Twombly*, 550 U.S. at 554, neither does it need to be supported by evidence, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  Yet "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief. *Id.* (internal quotation marks omitted).

5

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009). A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is liable for the alleged misconduct. *Twombly*, 550 U.S. at 556; *see also Iqbal*, 556 U.S. at 678. In resolving a Motion to Dismiss, a court must regard as true all of a plaintiff's well-pleaded allegations. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court does not have to accept legal conclusions couched as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Iqbal*, 556 U.S. 678. With these principles in mind, this Court must ultimately ascertain whether the plaintiff has stated a plausible, not merely speculative, claim for relief.

Defendants properly removed this case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441(a). As this case was originally filed in a Virginia Circuit Court and involves claims for relief under the laws of Virginia, this Court should apply Virginia law in adjudicating this case. *United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

## III.   DISCUSSION

In their Motion to Dismiss, Defendants assert that Plaintiff's Amended Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendants argue Count One claiming breach of the

Note and Deed of Trust, should be dismissed because the notice of acceleration provided complied with the terms of the Note and Deed of Trust. Defendants next assert Counts Two and Three for actual fraud and constructive fraud, respectively, must be dismissed because Plaintiff fails to plead (1) reliance, because Matanic would have incurred the expense of providing tax documentation for the loan modification process regardless of the representatives' statements; (2) that the representation was made knowingly and intentionally because Matanic does not identify the person he spoke with or what Wells Fargo gained by making the representation; (3) that the reliance on the representation caused him actual damages because Wells Fargo was under no obligation to stop the sale even if Plaintiff retained private counsel. As to the final count, Defendants assert the claim for breach of the implied covenant of good faith and fair dealing fails because the Uniform Commercial Code ("U.C.C.") does not apply to mortgage contracts and Virginia does not recognize an independent cause of action for such a breach. Finally, Defendants argue that any action for quiet title must fail because Plaintiff does not have superior rights to the property. The sufficiency of each claim in Plaintiff's Amended Complaint is discussed in turn below.

### A. Count One: Breach of the Note and Deed of Trust

Plaintiff advances three grounds in support of his contention that the Acceleration Letter did not comply with the requirements of Note and Deed of Trust. First, Plaintiff alleges the requirement to pay the payment due on the first of the next month in order to avoid acceleration breached the terms of the Note and Deed of Trust. Compl. ¶ 12. Second, Plaintiff pleads the Acceleration Letter's language did not comply with the Note

and Deed of Trust.  Compl. ¶ 12.  Finally, Plaintiff contends that the Acceleration Letter did not provide requisite 30-day notice because the cure period was calculated from the date the letter was posted, which was a Sunday.  Each allegation for breach of the Note and Deed of Trust fails to state a claim upon which relief can be granted.

Requiring submission of the next regular monthly payment in order to cure default does not breach the agreement between the parties.  The Acceleration Letter sent to Plaintiff required payment of the delinquency as of the date of the letter in order to cure default.  It also informed Plaintiff "[f]or the loan to be current and not in default, any additional monthly payments, late charges and other charges that may be due under the note, mortgage and applicable law after the date of this notice must also be paid." Plaintiff contends this language required him to pay sums not yet due in order to avoid acceleration in breach of section 6(c) of the Note, which states, "If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount" of the loan.

The requirement to tender August's regular payment was not a breach of the Note because it was a reminder to the borrower that paying the amount required to cure the default does not relieve him of paying the regularly scheduled payment due before the cure period ends.  If he did not make that regular monthly payment by August 16, 2011, the end of the cure period, the loan would again be in default according to section 6(b) of the Note stating "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."  Accordingly, the requirement to pay the next month's regularly

scheduled payment by the end of the cure period does not violate the terms of the Note or Deed of Trust.

The language used in the Acceleration Letter likewise does not violate the terms of the Note or Deed of Trust. Plaintiff alleges the language used in the Acceleration letter informing him of his rights the event of default does not track the text of the Deed of Trust. The Deed of Trust requires the Acceleration Notice to inform the borrower of "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Deed of Trust § 22. The Acceleration Letter instead uses language stating, "[Y]ou have the right to argue that you did keep your promises and agreements under the Mortgage Note, and to present any other defenses that you may have."

Under Virginia law, a material breach of contract is defined as "a failure to do something that is so fundamental to the contract that the failure to perform the obligation defeats an essential purpose of the contract." *Countryside Orthopaedics v. Peyton*, 261 Va. 242, 154, 541 S.E.2d 279, 285 (2001) (citing *Horton v. Horton*, 254 Va. 111, 115, 487 S.E.2d 200, 204 (1997)). The Supreme Court of Virginia has identified two essential purposes of a Deed of Trust: "to secure the lender-beneficiary's interest in the parcel it coveys and to protect the borrower from acceleration of the debts and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes." *Mathews v. PHH Mortgage Corp.*, 283 Va. 723, 732, 724 S.E.2d 196, 200 (2012). In a case recently decided in this district with similar circumstances, the Court held that although a lender did not use identical language in its acceleration notice, "any deficiency

in that regard is immaterial." *Cole v. GMAC Mortgage, LLC*, No. 1:10cv848, 2011 U.S. Dist. LEXIS 101606, at *7 (E.D. Va. Sept. 7, 2011). The Court that found language providing Plaintiffs with reasonable notice regarding the right to assert a legal defense, despite the absence of the words "to bring a court action," "materially complies with the deed of trust and is sufficient under Virginia law." *Id.* Here, the language used in the Acceleration Letter was slightly different from the language used in the Deed of Trust but in effect was the functional equivalent. It provided notice to the plaintiff of his rights in the event of foreclosure proceedings. Accordingly, the language used in the Acceleration letter fulfilled the lender's obligation under the Deed of Trust.

Finally, Plaintiff's argument that he did not receive 30 days' notice to cure the default because the Acceleration Letter was mailed on a Sunday is equally unavailing. Plaintiff alleges the notice was dated July 17, 2011, which was a Sunday, and gave the borrower until August 16, 2011 to cure. If Sunday is not considered the mailing day, the result would be that Plaintiff received only 29-days' notice, in breach of the Note and Deed of Trust which provide that Wells Fargo must give at least 30 days' notice before accelerating the loan. The defendants contend that the July 17, 2011 mailing date was consistent with the specific terms of the Note and Deed of Trust.

When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. *Plunkett v. Plunkett*, 271 Va. 162, 167, 624 S.E.2d 39, 42 (2006). The terms of a contract are not ambiguous merely because the parties disagree as to the meaning of the terms. *Id.* The Deed of Trust states that all notices "shall be deemed to have been given to Borrower when mailed by first class mail or when actually

delivered." Deed of Trust § 15.  Black's Law Dictionary defines the verb "mail" as "[t]o deposit (a letter, package, etc.) with the U.S. Postal Service; to ensure that a letter package, etc. is properly addressed, stamped, and placed into a receptacle for mail pickup."  Black's Law Dictionary 1038 (9th Ed. 2009).  Plaintiff does not contend that Wells Fargo did not place the letter in a mail receptacle with a proper address for delivery on July 17, 2011, only that the date was a Sunday.  The definition of "mail" does not depend on when the Postal Service is open, only when the letter is deposited with the Postal Service.  Accordingly, Plaintiff received 30-day notice as required by the Note and Deed of Trust and all claims for breach of the Note and Deed of Trust fail to state a claim for relief and are dismissed.

### B.  Count Two: Fraud

Plaintiff bases his fraud claims on conversations on December 13 & 14, 2011 with an unidentified Wells Fargo representative who told Matanic Wells Fargo would be willing to stop the foreclosure proceedings if he provided federal tax information. Compl. ¶ 49.  Plaintiff maintains that the statements were false because he alleges Wells Fargo intended to foreclose on the home on December 15, 2011 regardless of whether or not tax documentation was received.  Compl. ¶ 53.  In reliance on the statements from Wells Fargo, Plaintiff alleges he went to "a great deal of trouble and some small expense to send to Wells Fargo the tax information required" and "did not obtain private counsel who could have stopped the December 15, 2011 foreclosure." Compl. ¶¶ 52, 56–57.

Fraud requires a showing of (1) a false representation, (2) of a material fact, (3) that was made intentionally and knowingly, (4) with the intent to mislead, (5) reasonable

reliance by the party misled, and (6) resulting damage to the party misled.  *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 367, 585 S.E.2d 578, 581 (2003).  In addition, Federal Rule of Civil Procedure 9(b) and Virginia law require that claims for fraud be pled with particularity.  The party alleging fraud must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Such circumstances include "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks omitted).

At this stage of the proceedings, Plaintiff pleads fraud with sufficient particularity by alleging the time, place, and contents of the false representation.  Plaintiff alleges that on December 13 & 14, 2011, a Wells Fargo representative told Matanic that Wells Fargo would be willing to stop the foreclosure if federal tax return information was received.  Compl. ¶P 49, 53.  Plaintiff claims damages as a result of his reliance on this representation, namely that he "did not obtain private counsel who could have stopped the December 15, 2011 foreclosure." Compl. ¶ 52.  This skeletal allegation of damages is sufficient to survive a motion to dismiss.  *See Bennett*, 2012 U.S. Dist. LEXIS 54725; *Albayero*, 2011 U.S. Dist. LEXIS 114974.

Though Matanic does not identify the exact name of the representative he spoke with, he identifies the representative as an agent of Wells Fargo, which is sufficient to survive a motion to dismiss.  *See Albayero*, 2011 U.S. Dist. LEXIS 114974; Compl. ¶ 49.  Additionally, Plaintiff specifically pleads that "Wells Fargo intended to foreclose on the

12

home on December 15, 2011 whether or not Wells Fargo received the said tax information prior to the time scheduled for the foreclosure." Compl. ¶¶ 50, 54. Taking this allegation as true, it satisfies the requirement that the promise be false at the time the promisor made the statements. *See Station #2, LLC. v. Lynch*, 695 S.E.2d 537, 540 (Va. 2010)). The pleadings for a claim of actual fraud are sufficiently particularized to survive a motion to dismiss; and therefore, Defendants' Motion to Dismiss is denied as to Count Two.

### C. Count Three: Constructive Fraud

Virginia recognizes an action for constructive fraud. The elements are the same as for an action for fraud; however, the plaintiff need only "plead that the false representation was made innocently or negligently." *Sales v. Kecoughtan Housing Co.*, 279 Va. 475, 481, 690 S.E.2d 91, 94 (2010). The parties rely on the same arguments made regarding Count Two for actual fraud. For the same reasoning provided for Count Two above, the Court finds the Plaintiff sufficiently pled a claim for constructive fraud and Defendants' Motion to Dismiss is denied with regard to Count Three.

### D. Count Four: Breach of the Implied Covenant of Good Faith and Fair Dealing

Count Four, claiming breach of the implied covenant of good faith and fair dealing must be dismissed because the U.C.C. does not apply to this transaction and Virginia law does not recognize such a cause of action. The U.C.C. does not apply to contracts involving the "creation or transfer of an interest in or lien on real property." Va. Code Ann. § 8.9A-104(d)(11). It is also is well settled that Virginia law does not recognize an

independent cause of action for breach of the implied warranty of good faith and fair dealing. *See Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 33, 466 S.E.2d 382, 385 (1996) ("[T]he failure to act in good faith . . . does not amount to an independent tort"). As a result, this district has dismissed at least four claims alleging a breach of the implied warranty of good faith and fair dealing in similar situations. *Bennett*, 2012 U.S. Dist. LEXIS 54725; *Albayero*, 2011 U.S. Dist. LEXIS 114974; *Washington v. CitiMortgage, Inc.*, No. 3:10cv887, 2011 U.S. Dist. LEXIS 52105 (E.D. Va. May 16, 2011); *Harrison v. US Bank National*, No. 3:12cv224, 2012 U.S. Dist. LEXIS 85735 (E.D. Va. June 20, 2012). This case is no different and Count Four is therefore dismissed.

### E. Action for Quiet Title

Lastly, Defendants' contend that Plaintiff cannot plead a viable action for quiet title because he does not have superior rights to the property. In Virginia, "[a]n action for quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against the title." *Maine v. Adams*, 277 Va. 230, 238, 672 S.E.2d 862, 866 (2009). In order to assert a claim for quiet title, the plaintiff must plead that he has fully satisfied all legal obligations to the party in interest. *Tapia v. U.S. Bank*, 718 F. Supp. 2d 689 (E.D. Va. 2010), *aff'd* 441 F. App'x 166 (4th Cir. 2011).[3] Here, Plaintiff does not plead that he has satisfied his

---

[3] Plaintiff relies on *Salazar v. U.S. Bank N.A.*, 82 Va. Cir. 344, 349 (2011), finding an "admission that the property remains encumbered by the Deed of Trust does not preclude their quiet title claim." This Court is not bound by the Fairfax County Circuit Court decision. In any event, this case is clearly distinguishable from *Salazar*. The plaintiffs in *Salazar* alleged foreclosing bank had no right to foreclose on the home because it was not a beneficiary of the underlying debt. *Id.* That is not the case here.

obligations under the Note and Deed of Trust; rather, he admits owing money on the Note and Deed of Trust.  Compl. ¶ 8.  Accordingly, any claim for quiet title fails.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss.  The Court GRANTS the Motion to Dismiss Counts One and Four, but DENIES the Motion to Dismiss Counts Two and Three. Accordingly, Counts One and Four are dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Dated: Sept. 18, 2012
Richmond, Virginia

15